5-24-0895, Mad Cow Oil Company v. H&R Oil Properties, et al. On behalf of the appellant, I've got Mr. Magg. On behalf of the appellees, I have Mr. Schott and Mr. Wallace. My notes here, when you gentlemen signed in, that Mr. Schott's going to take 10 minutes of your argument. I'll have less time. Well, again, as we stated, we'll make sure everybody's got enough time. And Mr. Wallace, you're going to take five minutes, correct? Yes, Your Honor. Okay. With all that being said, Mr. Magg, you ready to proceed? Yes, Your Honor. Come on up. Pleased to court. Counsel. My name is Thomas Magg. I represent Mad Cow Oil Company. This is an appeal of a dismissal on the pleadings under 2-615. The root deed at issue, I'll call it, was issued by the Madison County trustee. It's a tax deed for some mineral interest in Madison County, 120 acres. Under Illinois law, the law of most, if not every state, oil and gas is deemed a mineral. Understanding that geologically and biologically speaking, there may be a difference between oil and gas, which is caused by natural processes, and hematite, which is a rock, for lack of a better term. Under Illinois law, oil and gas is a mineral. The deed originally issued and ultimately assigned to the appellate, in this case, Mad Cow, was a mineral deed. The deed issued by Madison County makes no reference to excluding oil and gas from the mineral deed. There is no deed in the record which indicates somebody else owns the oil and gas rights. The defendants in this case defended on the basis, ultimately adopted by the trial court, that the partial tax ID number includes certain codes that indicate that this might not be taxed as oil and gas. There's no affidavits authenticating any of this. Based on the names of the persons who were political officers at the time, at least one of the documents in the record was apparently drafted. The document appears to date roughly from the early 1980s, but there's no explanation as to whether those codes are current for today, what the effect of any of those codes are, and there's no law cited that an administrative organizational code can affect someone who has oil and gas rights or property rights of any kind. The mere fact that a parcel of property is given tax ID number 123XYZ does not substantively affect what that property right is. In this case, there was no finding that there were insufficient facts pled. This was not a summary judgment motion. Again, this was not a 619 motion. This was a 615 motion. And plaintiff will absolutely concede that in considering 615 motions, a court can consider things susceptible to judicial notice. Plaintiff will absolutely concede that certain public documents can, under appropriate circumstances, qualify for judicial notice. But what we have here today, even if they were accepted as authentic, do not defeat the claims. This is not a trial where a fact finder has to say, I think this is more likely true than not. We're not there yet. Unless the plaintiff pleads themselves out of court, fails to plead enough facts, or there really is some fact of judicial notice that defeats the claim, the plaintiff is entitled to proceed. For instance, if the plaintiff pleaded that the moon was made out of green cheese, obviously the court could take judicial notice that no, the moon is not made out of green cheese and dismiss the case. But that's not the kind of case we have here. The sum of the defendant's argument is because there is a 33 in the tax ID number, and at some point in antiquity tax code 33 referred to a mineral interest other than oil and gas, that the deed conveyed by Madison County trustee must not include oil and gas, therefore there is no complaint here. Again, there's no law that says organizational tax codes control substantive ownership interest. There's been nothing in the record that suggests that the defendants actually own anything. The case never should have been dismissed, and unless the court has any questions, I'll be happy to address you on rebuttal. Yes, Kate? Mr. Mayne, you indicated that this deed originally was a mineral deed? Yes. How do you know that? Because it conveys mineral interest. It does not convey service interest. Okay. But the issue seems to be the separation of the oil and gas from the word mineral. In the deed there is... I'm sorry, go ahead. Is that correct? The issue is whether or not the mineral interest deed conveyed oil and gas rights. That is accurate. Okay, well how do we know that oil and gas is subsumed within the term mineral? Because the law I cited in my brief, and I don't think it's disputed by the defendant of Illinois, says so. That is the law of Illinois. All mineral rights, the gas and oil is subsumed by the term all mineral rights. Oil and gas is a mineral under Illinois law, even though it's caused by the decay of biological matter when you get right down to it. Under Illinois law, it is a mineral. As are all other, I believe the term is, fundacious items that are part of the ground. And they are considered minerals unless and until removed from the land. At that point, title vests separately. Okay, so it's upon their removal that title becomes separated. Correct. Once you pump the oil out of the ground, you can sell the oil separately. But, and conceivably you could assign separate oil and gas rights, but the deed would have to say something to the effect of all mineral rights except oil and gas being conveyed to me. That's not what was done. All that was conveyed to Mad Cow in this case is all mineral interests. The defendant in this case hasn't presented any indicia of ownership of any oil and gas rights. All that they have done is shown these area codes, if you would call them that. Correct, correct. Okay, and the 2-615 dismissal assumes that you can provide a cause of action. It presumes that you would withstand, yes. Okay, thank you. Madison County's property records do show other people owning the oil and gas, don't they? The property records that are in the record of this case appear to me to be leasehold interest of what is produced. That likely expired when the county took the land for unpaid taxes. But that would be something that we would get into, assuming the court reversed and remanded, whether my view of that is accurate, I'm fairly certain it is. Or whether the county conveyed no oil and gas interest in the first instance. It's a factual question. Thank you. Justice Gates, any further questions? No, thank you. All right, thank you, Ms. Fax. Thank you, Your Honor. Obviously, you'll have your time for rebuttal. Go right ahead, Mr. Schott. Good morning. May it please the court, counsel. David Schott, I represent. My name is Martin Alfie. I'm going to back up a little bit here. Let's talk about the tax deed. The tax deed says minerals. That tax deed was conveyed to Thomas Magg, the plaintiff's attorney in this case. Thomas Magg then incorporates Magcal oil and executes a warranty deed to them from that tax deed. He adds language to the warranty deed. It no longer says minerals. Now the warranty deed says all minerals, including gas and oil, with the right to remove say. You can't just change a warranty deed to expand an interest in a piece of property. And that's exactly what was done here. He doesn't attach the tax deed to his complaint. He doesn't attach the warranty deed to his complaint. He just says, I have the warranty deed. Here's the language. So when the complaint comes in, we have to go to the recorder's office to get these deeds. That's when we realize it was initially conveyed to Thomas Magg. That's when we find out that he's added language to it. These are public records. After getting the parcel ID information and getting the deeds, we then go to maps and plaques, start looking at it. It's a book. It's about the size of a coffee table. I don't even know if they make them anymore. They're huge. On that book, you can see the property. On the overlay, it says who owns the oil interest. That's where we got the royalty interest owners. That's how we found out HR, who's a defendant we already know, had the working interest. Question comes up. Why are the parcel IDs numbered different? Why is the designation in the tax deed conveyed to Mr. Magg, does it have that area code 33? Why do all the other ones, in all the documents attached to an art to the motion to be dismissed, why do they say 31? I get a document from the maps and plaques. We have area codes. The area code in Madison County is that they assigned to mineral rights, and it's very clear. There's no ambiguity. It says mineral rights other than oil, gas, and coal. Where is that located? What are you talking about? That's the area code that's from the Office of Maps and Plaques. Why shouldn't the language of the deed, usually the deed would say accepting oil and gas or accepting mineral rights if I'm conveying the service but preserving mineral rights. Ordinarily, the deed would say the service of the South 40, of the Section 16, whatever, accepting mineral rights. Here, it doesn't say that. They just slap in a code that everyone is supposed to know that means only minerals except oil and gas. Shouldn't you have to have the language in there for that deed to be operative? If it's a public record, Your Honor, you can go down and get the area code that tells you exactly what it means. It wasn't difficult to obtain. I asked for it. I received it. The last deed doesn't say all minerals. It just says minerals. Is that how it was advertised for the tax sale? I do not know how it was advertised for the tax sale. I did not go back that far and look. But you do concede that the tax deed transferred by Madison County was mineral deed. It says mineral rights. It doesn't say all mineral rights. It doesn't say any and all mineral rights. It says mineral rights. The parcel ID number, which is used for taxation, has the area code of 33. You look that up. It says mineral miscellaneous. If you go to the Madison County Tax Inquiry website, that's where we got all those other documents. Again, court can take judicial notice of that. We cited the cases. This court has taken judicial notice. The Illinois Supreme Court, in fact, took judicial notice of a website, People v. Castillo, to determine the ownership interest in, I think it was Pontiac Correctional Facility. If you get all those documents and you look and you type in the MAG, the parcel identification number for the tax ID, for the tax deed, what it says is it says land use, miscellaneous minerals, property classification, miscellaneous minerals. If you type in for H&R, you type in their parcel ID number, it has the area code for oil, not minerals. It says land use, oil, property classification, oil. There's a legal description that says oil rights. It seems to me there's a dispute in the administrative records as to who owns the oil and gas on these area codes. That was never raised at the trial court level. In fact, it's not raised. I'm a little confused by the argument. He says we concede that the court can take judicial notice of public records, documents from government websites. That's not what the appellant's brief says. Page 9, first full paragraph, last sentence. In the first full paragraph, it says the court erred because they considered documents outside the four quarters of the pleading. His argument has changed after we filed our reply response. I'm not exactly sure what he's arguing here. He's never argued that. He never argued that in the trial court. His motion, his response to the motion to dismiss says I don't know if it's a 2-6-15 motion or not. Well, let's be very clear. That's not true because I drafted it. The motion to dismiss says pursuant to 2-6-15. The memorandum of law says pursuant to 2-6-15. The motion, his response to the motion to dismiss says I think it's a 2-6-19 because you're considering documents outside the pleadings. And then in the response, he doesn't even address that. He goes to the trial court and tells the judge, I win. It's outside the four corners of the complaint. He's changing the issue. He drafted a 2-6-15 motion, and that says that the plaintiff can't plead any facts which would support his position. That's a pretty tough burden to meet. The court is not required to accept well-pled facts to the extent he's pled well-pled facts when they're contradicted by documents and information of which the court can take judicial notice, which is what it did in this case. Where there's no clarity in the administrative rules, so to speak, and nobody's come in and said under oath what these things mean, how they were applied, et cetera, that seems to me to be something that's very difficult for you to overcome on a 6-1-5. Now, I think the court's, again, the court's not, they're not required to accept as true facts which are contradicted by judicially noticeable facts, which is what the trial court did in this case. They looked at the tax deed. They looked at the warranty deed. Noticed that the language has changed. And the question is, if all mineral rights include oil and gas rights and they can't be severed, then why change the language from the tax deed to the warranty deed? There would be no need to do that. The argument that... Let me ask you this. What is your standing to bring this action? I'm not bringing the action. I'm sorry. What is your standing in this action? Do you have a legitimate lease that you're protecting? We don't have a lease. Plains Market and LP purchases the oil as it's from H&R property, the code of things in this case. So we've been sued. You may not even have standing to raise the 6-1-5 issue if you don't have ownership somehow in this oil, right? My client's being sued, Your Honor. We have a right to respond to the complaint and argue that it's insufficient as a matter of law. Yes, of course you do. But my question is, is there anything in the record that shows that you have standing as an owner of this oil that's being removed from the ground? The allegation is that we're the purchaser of the oil as it's taken from the ground. That's the allegation in the complaint. Right. Do you have a contract? Do you have anything like that that you have in the record? No, not at this time. We filed a motion to dismiss based upon the documents we found from the recorder's office, the deeds, the documents we got from the Office of Maps and Plans. Okay. So right now there's nothing in the record that shows you even have an interest in this litigation, a financial interest, other than you're being sued? Other than we're being sued, no. We never got that far because our motion to dismiss was ran by the trial court. Properly so, it should be affirmed. I think my time's about up. Any other questions? Do we have any further questions, Justice Gaines? No. Just a follow-up? There was no – well, first of all, there are no transcripts of any of the hearings that were held at the trial court in the record. Is that correct? I can't – at this time I don't recall if we had it recorded or not. Typically in Madison County, if you don't specifically ask for a court report, they won't bring one up. I can't remember if I asked for one or not. Was there any challenge to any of the documentation you attached to your motion to dismiss? No. The validity of that documentation? No, no. His argument's changed. His argument completely changed. It went from – it's a 2619 motion. That's what his motion is. I'm treating this as a 2619 motion because it doesn't say – well, that's – we wouldn't link as to why the court could consider these documents on a 2615. That's directly in the memorandum of law. His appellate's brief says that the court erred because they considered documents outside of the pleadings. He concedes – I'm going to ask you this. When you buy the oil, you pay out to the royalty owners and the working interest holders and the oil company. Yeah. Based on division orders and that type of thing? Yeah. Are you paying out money for this interest right now? I don't remember the last time. Or are you looking at this expense to determine – I don't know. I don't know. We never got that far. When we got the complaint in – this happened right before Thanksgiving. We had to get the response of pleading on file. The first thing I was trying to figure out was where's the deed? Well, if Madison County issues a deed with a Code 33 on it that says it's for minerals other than oil and gas, I assume the oil and gas is still a record somewhere in Madison County's records. They have other people that are claiming to be the oil and gas owners, correct? That's correct. Yeah, so we have the – So on the property tax rolls, there's Mr. Magg's interest. It's a Code 33, maybe coal or something other than oil and gas. And out here somewhere else, there are unknown people who have, on Madison County's property rolls, the ownership interest of the oil and gas owner. That's correct. If you look at the documents we attached to motion to submit, it shows who's paying the taxes. So those people are paying the taxes on this? The oil and gas has not been sold for tax sale. No, it has not. So in some of those parties, their ownership interest is like a fraction of a percent, and it says no tax. But for H&R Oil, they're paying tax, and it goes back. There's a drop-down box if you go to it, and it goes back, I think, to 2006. What we printed and attached to the motion to submit, I think, only goes back three or four years. We didn't hit the drop-down box. Thank you. Thank you.  May it please the Court, Counsel, Steve Wallace, a parent for H&R. Your Honors, we're talking about a tax deed that was issued by the County of Madison. It included the Area Code 33. I submit that the Court has to give meaning to that inclusion, and it is incumbent upon the tax buyer to investigate what that Area Code means. Mr. Mag, as the tax buyer, took title to property that described mineral rights and expressly used the Area Code 33. That Area Code is published by Madison County. That Area Code expressly excludes oil and gas. And there's a reason for that. Oil and gas ain't real estate. As this Court knows, oil and gas is personal property. When it's extracted, it becomes owned by the buyer of that personal property. So oil and gas rightfully was excluded. This Court, in Gelfius and Continental, in both cases, found that property interests, as we learned in law school, can be sliced and diced as much as you'd like to slice and dice it. And in this case, Madison County, when they conveyed the property, it used that Area Code. And by doing so, it sliced and diced that bundle of sticks and excluded from the conveyance to Mr. Mag and then ultimately to Matt Powell, oil and gas. Other minerals, that's fine and dandy because let them have at the other minerals. But Madison County's conveyance has to be given meaning. And the only way to give it meaning is to focus on and investigate that Area Code that Madison County obviously intentionally used in its conveyancing documents. What were they selling in the tax sale then? All other minerals other than oil and gas? All minerals other than oil and gas. But those minerals can't be taxed until they're removed from the ground. So is there other activity going on there? They can be taxed in place. Those rights can be taxed in place before they're removed. In fact, Madison County was taxing those rights, and that's the reason for the tax sale because the taxes for those other minerals wasn't paid. That's the reason that Madison County conducted the tax sale and Mr. Mag bought a tax sale and those rights, that limited bundle of rights was conveyed to Mr. Mag and then ultimately he conveyed it with an addition to Matt Powell. Mr. Wallace, can you produce the deed that shows the oil and gas taxable interest rights? I don't have that deed handy, Your Honor. I apologize for that. And that deed is not in the record, is it? It is not in the record. So really, I mean, how are we supposed to know whether the county of Madison is taxing the property correctly? We're just supposed to take an administrative code without explanation? I would submit, Your Honor, yes, because Madison County conveyed the property. It picked the conveyance that it intended to make, and that conveyance included the unique parcel number. And as we know, parcel number... It included an administrative number, but the language of the deed says mineral rights. It does. And that description, Your Honor, I would submit, jives with the administrative code Madison County used because Madison County's schedule of the area codes specifically says area code 33 includes minerals other than oil and gas. So that, I would submit to the court that the area code 33 syncs, if you will, with the legal description that refers to mineral rights. And it was incumbent, as I said, it was incumbent upon the transferee or the grantee to investigate what that deed he received meant. Because parcel numbers, Madison County, as I said, I don't mean to beat a dead horse, but I've done that before, and I'll probably do it again. But Madison County chose the language it included in the deed, and that would include that area code. But your client hasn't produced the deed either. And your client is the one charged with, I guess, removing the oil... Yes. ...without potentially any ability to do so. So you haven't clarified the meaning of mineral rights in this 2-615 motion. Which I understand Mr. Manning's confusion because it could be a 619 motion, but you've chosen a 615 in order to ask for dismissal. We have, Your Honor, and the court has indicated, has held, that judicial notice in the context of a 2-615 motion is appropriate. And so the court can take judicial notice of public records such as those that were appended to the motion here. Yes. I'm just wondering whether those are sufficient for us to support the 615 finding... Your Honor. ...in light of the fact that there's still this ambiguity, that you haven't produced a deed that says otherwise. Your Honor, except, and again, here I go beating a dead horse. Your Honor knows I beat dead horses. But except Madison County's already done that for us. Madison County did it when it picked the language of its deed and included the parcel number. And that's the sum and substance of the argument. And, again, the tax buyer should have investigated to determine what that area code and what the parcel number meant. Because, again, as we know, those parcel numbers are unique. And that's throughout the state. I mean, obviously, each parcel has different parcel numbers for each strata, potentially. And the county taxes each strata, each level, if you will, accordingly based upon those parcel numbers. How do we know that? Because Madison... How do we know what you just said? Because Madison County has said so. Where did they say so? In the schedule of area codes that Madison County has published. So we take a schedule, we take judicial notice of the schedule, and then we apply our interpretation to the schedule? Yes, Your Honor. Not anything more? I submit yes, Your Honor. I submit so. Because that's what the deed says. Okay. Why shouldn't it be in the record? When there's a tax sale, the treasurer publishes in the paper, gives public notice there's going to be a tax sale, and they list the parcels that are going to be for sale. Why should we not have in the record for us to look at the notice of tax sale that says what parcels are being sold? Does the Code 33 appear in the notice of tax sale, or do you have to buy the property? And when you get your deed, you find out it has a Code 33 on it. How does that work exactly? You know, I understand completely the Court's question, and that's an excellent question. That's an excellent issue to raise. I don't know as I stand here today what the notice of tax sale said. I would hazard that it would once again sync with the parcel ID number that's set forth in the deed. I can't answer the Court's question. I don't know. And I have to be candid with you, I'm not going to blow smoke at the Court. All right. Thank you. Thank you, Your Honors. Mr. Cage, do you have any questions? No, thank you. Thank you for the Court's time. Thank you as well. All right. Any questions? Unless the Court has any questions, I think the matter has been pretty well addressed. I think the Court has a handle on what the arguments are. When you purchased the tax deed, did you have a title search done by title company or anybody? No. I presume that the court order awarding the county trustee ownership was a valid order. Understandable. But by taking that at another level, by having a title search done, then you would know exactly the history of the title and what you purchased. There is, if you go on the Madison County, I don't know if it's the recorder or the treasurer's website, one of the two, basically a list of who owned it in the past, conveyances, taxes paid, and it shows the ownership history going back a certain number of years and shows when the county took it. That was done, but that didn't really provide any additional information that's not already contained on the deed itself. Okay. Can I ask the other side of the coin? I'm sorry. The other side of the coin of the question I ask opposing counsel is, we don't have the notice of tax sale. You're the appellant, though. The responsibility for giving us the record to help us decide the case falls on you. Why isn't the notice of tax sale that says what you're buying in part of the record? Because the deed from the county is in the record, and it has a Code 33 on it. It says Code 33. It's got some other numbers on there as well. I have seen cases where, for instance, property that was bought out of state had listed on it a St. Clair County taxpayer ID number on it, because the attorney in question who drafted the deed simply left it on by mistake, but that had nothing to do with what property was actually owned. It's an administrative organizational code. Nothing more, nothing less. Thank you. Justice Cage, do you have any questions for Mr. Magg? Mr. Magg, I'm looking at your complaint. Do any accounts of this complaint ask for declaratory relief, or is it all money judgment? I believe there is an account, and they're asking for declaratory relief, but I couldn't swear to it without looking at it. It would be typical on a property case that I would do so. Yeah, I'm just looking at it. Okay. All right. Thank you. Anything else for Mr. Magg? No, thank you. All right. Thank you, counsel. Thank you all. Counsel? Actually, counsel, we'll take the matter under advisement. We will issue an order in due course.